ISER ELECTRIC COMPANY, Plaintiff-Appellee, *v.* INGRAN CONSTRUC-
TION COMPANY *et al.*, Defendants.—(BANK OF OAKBROOK TERRACE,
Garnishee-Defendant; MERCANTILE FINANCIAL CORPORATION,
Intervenor-Appellant.)

Second District   No. 76-145

Opinion filed April 26, 1977.

James B. Gottlieb, of Chicago, for appellant.

Roy C. Palmer and Dominic J. Mancini, both of Palmer, Blackman & Mancini, of Chicago, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal arises out of a garnishment action and involves a dispute as to who has prior claim to funds in a savings account—the assignee of the account or the judgment creditor who garnished the account.

In February 1974, Ingran Construction Company (the debtor in the garnishment proceeding) executed a judgment note in favor of Iser Electric Company (the garnishing creditor here) for $50,000. The note was guaranteed by Anthony Jaconetti, Ingran's president. It was not paid when due and judgment by confession was entered on the note on November 4, 1974. On November 19, 1974, garnishment summons was served on the Bank of Oakbrook Terrace, where Jaconetti had a savings account in his own right as well as an account of which he was trustee. The bank filed an answer requesting more specific information as to the account garnisheed. Iser Electric Company then moved to have the garnisheed funds turned over to it and the defendant Jaconetti filed a motion (apparently oral) to open the judgment by confession. The trial court took both motions under advisement and in an order dated July 1, 1975, issued its memorandum decision sustaining and confirming the judgment by confession as to Jaconetti, appropriate order to be submitted within 14 days. On August 7, 1975, Ingran and Jaconetti filed notice of appeal (but failed to file a supersedeas bond).[1]

On July 31, 1975, the trial court entered its order confirming the judgment by confession, denying the motion to open the judgment and directing the bank to turn over to Iser, the garnishing creditor, the amount of $22,503 (the amount in Jaconetti's savings account) immediately upon demand. Execution of this order was stayed for 14 days.

On September 9, 1975, the Bank of Oakbrook Terrace filed a petition to implead the garnished funds. In its petition the bank stated that on July 8, 1975, it had received a letter from Mercantile Financial Corporation together with a copy of a pledge and assignment of the savings account in question to Mercantile, which pledge and assignment indicated that it had been executed on October 25, 1974, as collateral to secure a loan of $50,000 to Ingran Construction Company, guaranteed by Jaconetti. The letter stated that Mercantile had physical possession of the passbooks in question as evidence of its security interest. A copy of Mercantile's letter of October 25, 1974, together with a copy of the pledge and assignment were attached to the bank's petition. The bank asked in its petition to be

---

[1] This appeal, based on the denial of the motion to open the judgment by confession, was disposed of in *Iser Electric Co. v. Ingran Construction Co.* (December 1976), 44 Ill. App. 3d 640.

allowed to implead the funds in question by depositing them with the court and then that it be dismissed from the action. The petition to implead the funds was allowed and the sum in question was deposited with the clerk of the court.

Mercantile then filed its petition as adverse claimant to the garnished funds and following further pleadings by both Iser and Mercantile, the court issued its order, dated December 11, 1975, *nunc pro tunc* as of November 20, 1975, finding that the claim of Iser Electric Company as garnishing creditor was superior to the claim of Mercantile Financial Corporation as assignee of the savings account and ordering the clerk of the court to pay Iser Electric Company the amount on deposit with him. In its order the trial court found (1) that the assignment to Mercantile had no validity until notice of the assignment was given to the Bank of Oakbrook Terrace; (2) that the judgment debtor, Jaconetti, was free to withdraw the funds at the time of the garnishment, hence the funds were free of any right of Mercantile, "inasmuch as at the time the lien or assignment was secret and undisclosed." The court also found that the claimant had the burden of proving its claim by a preponderance of the evidence, which it had failed to do. After its motion to reconsider was denied, Mercantile filed this appeal.

The assignment in question assigned to Mercantile Financial Corporation all of Jaconetti's "right, title and interest in those certain Bank of Oakbrook Terrace * * * Savings Account Pass Books bearing Account Numbers 032-912 and 032-920 in the amounts of $20,000.00 and $25,000.00 respectively" and was assigned "for collateral purposes and is subject to all the terms of a Security Agreement under which the Savings Account Pass Books have been deposited with Mercantile to secure a Note in the amount of $50,000.00," constituting and appointing Mercantile his attorney in fact to collect said savings account books.

The passbooks in question contained a printed provision reading as follows:

> "No assignment of any regular savings account nor any part thereof shall be valid unless written notice thereof has been given to the bank and accepted by said bank."

Iser invokes this provision in the passbook as invalidating any assignment between Jaconetti and Mercantile, without the consent of the bank, which was not sought or obtained as no notice was given of the assignment until after the garnishment proceeding.

In this appeal Mercantile contends that the assignment and pledge of the passbooks constituted it the equitable owner of the savings account in question and that the law of Illinois is that a prior assignment is not affected by a subsequent garnishment so long as the garnishee is notified

of the assignment in time to avoid exposure by the garnishee to double payment. As to Iser's argument that its lien was not perfected because no valid assignment could be made without notice to the bank, Mercantile contends that the passbook provision in question was put there solely for the benefit of the bank as a security measure, that it can only be invoked by the bank and that the bank did not raise it in this instance, therefore it is irrelevant and has no bearing on the question of priorities as between Iser and Mercantile.

■■ We believe Mercantile's contention with regard to the effect of the passbook provision is correct. The provision was manifestly inserted for the protection of the bank against a double payment. In this case the bank did not raise the provision and, indeed, in its petition indicated it had grave doubt as to who had the superior right to the fund in question, as between Mercantile's claimed prior assignment and Iser's judgment by confession. It never asserted that the assignment was not valid because of the passbook provision in question. We do not believe a third party, being a stranger to the transaction between the bank and its depositor, Jaconetti, can properly invoke this provision as against either the bank or its depositor. (See *Nicholson v. Nicholson Coal Co.* (1914), 190 Ill. App. 607; 17 Am. Jur. 2d *Contracts* § 297 (1964).) The mere relationship of judgment creditor to one of the parties does not confer privity on a stranger to the contract, where the contract was obviously not made for his benefit. (12 Ill. L. & Prac. *Contracts* § 266 (1955); *New York, Chicago & St. Louis R.R. Co. v. Erie R.R. Co.* (1952), 346 Ill. App. 356.) In our opinion, the passbook regulation in question here does not affect the assignment as between Jaconetti and Mercantile.

Iser contends, however, that regardless of what construction is put upon the passbook regulation as to the assignment, Mercantile's claim is inferior to that of Iser because Mercantile failed to notify the bank of its assignment until after the garnishment summons had been issued and evidence heard and a preliminary finding made in the garnishor's favor. Iser asserts in its brief that "Notice of an Assignment Prior to the Service of a Writ of Garnishment by a Bona Fide Creditor of the Assignor is Indispensable to the Priority of the Assignment Over the Garnishment."

As we read the cases adduced in support of this proposition we find that most of them either do not support the plaintiff's contention or are not in point because they do not involve a garnishment or do not involve a true assignment.

The cases cited by Iser—all of them old—which appear to be in point are *Knight v. Griffey* (1896), 161 Ill. 85; *Carr v. Waugh* (1862), 28 Ill. 418, and *Anderson v. McGraw* (1906), 124 Ill. App. 457. We will discuss them briefly. The only other case among those cited involving the precise

question of priority as between an assignee and a garnishment creditor—*Mayr v. Hodge & Homer Co.* (1898), 78 Ill. App. 556—was decided strictly on the basis of fraud and not on the legal question involved here.

*Knight v. Griffey* involved a suit on an appeal bond for the nonpayment of a judgment. A judgment was rendered against Knight in favor of Griffey and Knight appealed the judgment and executed an appeal bond to perfect his appeal. The judgment having been affirmed on appeal, and not having been paid, Griffey filed suit on the bond. Subsequently, Griffey assigned the judgment in question to one Burry. Subsequent to the assignment of the judgment by Griffey to Burry, Knight was served with a garnishment summons by a creditor by the name of Ferry. While it was admitted the assignment was made prior to the garnishment proceedings, the garnishment creditor contended he had the superior right because no proper notice of the assignment was given to Knight until after the commencement of the garnishment proceedings, since prior to the garnishment suit the main suit had not divulged the name of any person as assignee. The suit (on the appeal bond) had been brought merely in the name of " 'Gustavus W. Griffey, for the use, etc.,' " rather than divulging the actual name of the assignee. After the garnishment proceedings were instituted the suit on the bond was amended to show that it was brought by Griffey "for the use of William Burry." In its decision our supreme court said that regardless of whether or not the notice of the assignment was properly given to Knight before the garnishment proceedings, he was notified when the title of the suit was amended and by personal notice to Knight. The court said:

> "It is not necessary, however, to consider the question whether either of them [the changes in the title of the suit] could operate as notice, for the reason that the defendant had full and complete notice of the rights of the assignee before he had answered in the garnishee proceeding or made any payment or been subjected to any liability." 161 Ill. 85, 88.

The creditor, Iser, here seizes on the phrase "before he had answered in the garnishee proceeding," as indicating that the assignee is foreclosed in any case where he fails to give notice to the garnishee before the garnishee answers. It should be noted, however, that in the *Knight* case the court was not required to decide what the result would be in a case where the garnishee was in a position of a disinterested stakeholder and whose "answer" was merely an acknowledgement that it did in fact hold funds belonging to the judgment debtor. Whether the court, if it had been called upon to decide such a case, would have foreclosed the assignee because the garnishee bank had not been notified of the assignment at the time it acknowledged its possession of the debtor's funds, is problematical. What the case actually decides is merely that since the

garnishee had actual notice of the assignment before he answered, the assignment had preference. It did not decide that had the notice been given after the answer but before final judgment and before any payment to the creditor, that the assignment would have been ignored. It is interesting to note that the assignee, Mercantile, cites this case also, but as authority for the priority of the assignee's claim. This is understandable inasmuch as the assignee did win the *Knight* case.

The 1862 case of *Carr v. Waugh* involves an assignment of a lease, of which assignment the lessee (debtor and garnishee) professed ignorance. A judgment creditor of the lessor (assignor of the lease) garnished the funds owed by the lessee and the assignee of the lease claimed priority. The court held the assignee had first claim under his assignment, saying:

> "After notice of the assignment to the lessee, his payment to the lessor would not have protected him against a recovery by the assignee. From these considerations it is manifest, that the beneficial interest in the rent was vested in Turner by the assignment." 28 Ill. 418, 422-23.

We fail to see how this case gives any support to the judgment creditor, Iser, in the case before us. Whatever this ancient and cryptic case is worth as authority in the case at hand, its weight appears to be on the side of the assignee, rather than on the side of the judgment creditor.

In the 1906 case of *Anderson v. McGraw*, a lease by McGraw to Anderson was assigned by McGraw to Ewing. The assignment of the lease was made on August 2, 1904, and on August 5, 1904, a judgment creditor of McGraw issued a garnishment summons against Anderson. At that time, the August rent under the lease was not due, not being payable until August 15. On August 19, Anderson answered the summons, and admitted $95 was due under the lease. McGraw pleaded bankruptcy and was dismissed. That case was appealed. On September 3, 1904 (apparently in an entirely separate suit by Ewing, the assignee), judgment by confession was entered against Anderson on the lease. Anderson moved to set aside the judgment, contending it was still undecided to whom the rent should be paid. The trial court denied the motion and the appellate court upheld the trial court, saying:

> "The action of the trial judge was correct. The assignment of the lease conveyed the unearned rent to the assignee. The rent due August 15, 1904, never was the property of McGraw. When it became earned and due it belonged to Ewing. It follows that Anderson was not subject to call as garnishee because of this rent upon a judgment rendered against McGraw. [Citation.]
>
> The affidavits conflict as to the time when notice of this assignment was given to Anderson. The only object of giving notice is to protect the rights of the assignee. It is undisputed that

Anderson received this notice before he had paid the rent to any one, and in ample time to set up the claim of Ewing in his answer as garnishee." (124 Ill. App. 457, 458-59.)

The assignment was upheld in this case over the garnishment.

Thus, in these three cases cited by Iser which involved a contest between a garnishing creditor and an assignee, the assignee prevailed in all three and the language of the *Carr* and *Anderson* cases seems to refute the idea that the assignee's rights are concluded as soon as the garnishee answers the garnishment summons admitting it has the funds in its possession. Even the *Knight* case is uncertain on that point. The old appellate case of *Moore v. Gravelot* (1878), 3 Ill. App. 442, relied on by the plaintiff here involved a mere order to pay money, being in the nature of a bill of exchange and did not operate as an assignment. It is not actually in point in this situation.

We do not wish to burden this opinion with an analysis of all the available opinions on this point, but we will mention three (also venerable) cited by the assignee, Mercantile, holding directly opposite to Iser's contention.

In *Reeves v. People* (1898), 78 Ill. App. 407, the court said:

"In the case at bar the assignment of the account by Organ to Reeves was for a valuable consideration. Reeves agreed to perform certain legal services for Organ, which he did render. This assignment was made on the 2nd day of February, 1898. The garnishee process sued out by appellee was served on White as garnishee on the 16th day of February, 1898. At this time White did not owe Organ anything. What he had owed him was now due Reeves. 'An equitable assignment will secure the property against attachment for the debt of the assignor, though no notice be given prior to the attachment to the person holding the property, if it be given in time to enable him to bring it to the attention of the court before judgment is rendered against a garnishee.' [Citations.] White, the garnishee, had notice of the assignment of this account to Reeves before the hearing and before the judgment was entered, and that gives Reeves priority, and the right to the account against White. The court erred in refusing to hold as the law the third proposition of law submitted to the court by appellant Reeves. By this the court was asked to hold that it is not material that White had no notice of this assignment (to Reeves) before he was served with the garnishee summons or before he filed his answer. It is sufficient that notice of the assignment was brought to White *pendente lite* and before the hearing on the interpleader, and before any judgment on his answer." 78 Ill. App. 407, 408-09.

*Price v. German Exchange Bank* (1895), 60 Ill. App. 418, holds the same way, as does *Harlev v. Harlev* (1896), 67 Ill. App. 138.

In *Williams v. West Chicago Street R.R. Co.* (1902), 199 Ill. 57, Oliver recovered a judgment against Williams in July, 1895. Upon execution the judgment was returned "no property found." In March 1896 Williams was injured by the West Chicago St. Railway. He employed a law firm to represent him in a suit against the railroad and agreed in writing that the attorneys handling the suit should retain for their services one-half of the amount to be recovered. Williams recovered a judgment on October 16, 1897, for $4,500. However, the trial court ordered a remittitur of $1,500. On October 26, 1897, Williams went to the law office and consented to a remittitur of $1,500. Mr. Wing of the law firm stated that he wanted the judgment assigned to him to secure the firm's fees. Williams agreed to assign the judgment to Wing and said that he owed his son, George, some money and wanted Wing to hold the rest of the judgment for his benefit. Wing had an assignment prepared for the entire $3,000 to his firm, and after a telephone conversation with George Williams, the son, he prepared another assignment assigning one-half of that sum to George. That same morning attorney Wing appeared before the trial judge, filed the remittitur and had judgment entered for $3,000. George was notified by telephone on October 27, 1897, that this had been done. On October 28, attorney Wing notified the railroad company of the assignment. The attorneys for Oliver had been watching the progress of the Williams' suit and on the morning the judgment was entered (October 26), they filed garnishment proceedings on the railroad company. Our supreme court held the assignment prevailed over the garnishment, saying:

> "The assignment being good as to the claim of Wing, Chadbourne & Leach, we see no reason why it is not good as to the claim of George S. Williams. It was made to Wing in part to secure his claim. He was immediately notified thereof and replied he was satisfied with the arrangement. So soon as he accepted the assignment to Wing for his benefit it was binding upon Samuel Williams, and if binding upon Samuel Williams it is binding upon the garnisheeing creditors. If the assignment to Wing is a valid assignment of all of the interest of Samuel Williams, for the benefit, first, of Wing, Chadbourne & Leach, and then of George S. Williams, it becomes immaterial whether the second assignment made to George S. Williams was delivered prior to the service of the garnishee summons upon the company [railroad company], as the claim of George S. Williams will be protected under the assignment to Wing. The fact that the company was not notified that the judgment had been assigned until after the service of the

garnishee summons will not defeat the assignment. [Citation.]" 199 Ill. 57, 62.

In one of the few modern cases on the precise point—*Liberty Leasing Co. v. Crown Ice Machine Leasing Co.* (1974), 19 Ill. App. 3d 27—Liberty Leasing as garnishing creditor served garnishment summons on Swift and Company alleging Swift held funds belonging to Crown Ice Machine Leasing Co., its debtor. Swift answered and denied it had funds belonging to Crown and by affidavit showed the contract by which Swift was indebted to Crown had been assigned to a Mississippi bank prior to the garnishment. In the course of its opinion upholding the assignment over the garnishment and discharging Swift as garnishee the court said:

> "It has been the general rule in Illinois that an assignment by the judgment debtor prior to the commencement of garnishment proceedings, absent fraud, precludes the garnishor from prevailing against the garnishee." 19 Ill. App. 3d 27, 29.

There seems to be no question in light of the authorities cited above that a prior assignment will not be defeated by a subsequent garnishment of the same funds by the mere filing of a garnishment summons. The judgment creditor here more or less concedes this general rule; however, he says there is an exception which is that if garnishment summons is filed and the answer of the garnishee is made prior to the garnishee being notified of the assignment, then the assignee loses his priority and his claim is subject to that of the garnishing creditor. The theory is that upon the admission of the garnishee that it holds funds of the debtor, a lien is placed on those funds and it is then too late for the assignee to lay claim to these funds.

We do not think the cases cited above support this contention nor do we see any logic in such a rule. The situation here is typical of many present-day garnishments where the garnishment summons is served on a large corporation or financial institution which is in possession of funds in the usual course of business as custodian, banker, employer, insurer or otherwise, but having no real connection with the transaction between the creditor and the debtor. That the mere service of garnishment summons on such an institution and answer thereto by the garnishee should enable a creditor to defeat a previous equitable or legal assignment made as collateral security for a debt seems in the modern business world unwarranted and unnecessary, absent an indication of fraud. There has been no evidence of fraud here which can be invoked to defeat the assignment on that ground. Some cases have indicated, though not conclusively in our opinion, that if the garnishment procedure goes to final judgment before the garnishee is notified by the assignee, this will defeat his claim. However this may be, that question is not in issue here since only a conditional judgment had been issued which had not yet been

confirmed at the time of the notice to the bank of the assignment. It appears to us that the precise issue, therefore, is whether the assignee is estopped to claim the benefit of the assignment by virtue of failure to establish his assignment rights with the garnishee before the garnishment process was issued and the garnishee had answered, admitting funds of the debtor to be in its possession.

We think this narrow issue must be resolved in favor of the assignee on the grounds of logic as well as precedent. There is no evidence in the record to suggest the assignment was not made on the date it actually bears. It was not an isolated transaction but, as the testimony disclosed, was one of a series of financial transactions between Jaconetti and Mercantile, and indeed, as was revealed in testimony and oral argument, the particular transaction here involved was originally supposed to have been secured by certain certificates of deposit, which was never done, giving rise, it was suggested, to the oversight in notifying the bank of the assignment and pledge of the pass book accounts. Absent fraud, it is our opinion Mercantile preserved its rights as against Iser under the particular circumstances of this case. The bank was not prejudiced by the delay in notifying them and raised no issue as to the delay. Neither was Iser's position prejudiced so far as we can see. The note on which Iser eventually confessed judgment was executed long before the assignment of the savings accounts to Mercantile and presumably was based on work and materials furnished in connection with a building project (Elmhurst Inn), but that credit had already been extended and the work and material expended at the time of Jaconetti's transaction with Mercantile. Iser was, therefore, an unsecured creditor at that time, whereas Mercantile, by virtue of the assignment, became a secured creditor. Had Mercantile notified the bank immediately this would not in any way have changed Iser's position. Nor can we assume that Mercantile loaned $50,000 to Jaconetti knowing that garnishment proceedings against him by Iser were imminent and thus deliberately land itself in the middle of a controversy. It was guilty of some negligence but taken as a whole the circumstances do not suggest fraud.

We therefore deal only with the legal issue of the priority of the assignment under the particular facts at hand. These facts establish that the garnishee bank was notified of the assignment on July 8, 1975, before final judgment had been entered (July 31, 1975, execution stayed for 14 days). We express no opinion as to what the position of Mercantile would have been had the notice of the assignment not been given to the bank until after the rendition of the final judgment, since it is not necessary to do so under the facts of this case. As to the facts of this case, however, we think the assignment must prevail, where, as here, notice was given after the institution of garnishment proceedings but before judgment by

confession was confirmed and made final and the legal position of the parties has not been prejudiced by the delay. It is true, as contended by Iser, that the garnishment process subjected the garnisheed funds to a lien in the creditor's favor, but the assignment had already subjected the funds to a lien in favor of Mercantile at that time. As was said in *Williams v. West Chicago Street R.R. Co.* (1902), 199 Ill. 57:

> "If it was a good assignment as to Williams [assignor] it was good as to the Olivers [garnisheeing creditors], unless impeached for fraud. If Samuel Williams was not in a position to question the assignment and is bound thereby the Olivers are also bound, for if they recover at all it must be upon the theory that Samuel Williams had not assigned the judgment, as a recovery must be had in his name for their use." (199 Ill. 57, 62.)

In 6 Am. Jur. 2d *Assignments* § 102 (1963), it is said:

> "The assignee of a thing in action acquires at once an equitable ownership therein, so far as it is possible to predicate property or ownership of such a species of right. As a general rule he takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor, and a claim good in the hands of an assignor which is good against the original debtor is ordinarily equally good and free from defenses in the hands of his assignee."

The assignment in this case appears to be governed by the principles of common law enunciated above, rather than by the Uniform Commercial Code, inasmuch as section 9—104(*l*) of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—104(*l*)) specifically exempts transfer of an interest in a deposit account from its coverage. Under section 9—105(1)(e) of the Code, a deposit account includes a pass book.

Thus, while there was a lien in favor of Iser through the garnishment proceedings, there was a prior lien in favor of Mercantile through the assignment. That priority could be lost and in this case came close to being lost through lack of notice to the garnishee. But, it was not lost merely through the institution of garnishment proceedings since the garnishment proceedings in and of themselves did not change the position of the parties to their prejudice.

■■ We hold, therefore, that the assignment of the savings accounts in question by Jaconetti to Mercantile Financial Corporation gave Mercantile a prior claim to the proceeds of the accounts, which was not defeated by the subsequent garnishment summons. The trial court's order entered December 11, 1975, *nunc pro tunc* as of November 20, 1975, finding that Iser Electric Company has a prior claim to the funds deposited with the clerk of the court by the Bank of Oakbrook Terrace, and that Iser Electric Company is entitled to the entire fund, is hereby

reversed. Inasmuch as it appears from the pleadings that the sum in question has already been paid to Iser Electric Company by the clerk, pursuant to the court's order, the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SEIDENFELD and GUILD, JJ., concur.