In the Matter of AMERICAN MOTOR HOME RENTALS, INC., Debtor.

James H. THOMPSON, Jr., trustee in bankruptcy, Plaintiff,

v.

CITICORP PERSON TO PERSON FINANCIAL CENTER, INC., Defendant.

Bankruptcy No. 79–01313–SJ.

Adv. No. 80–0328–SJ.

United States Bankruptcy Court, W. D. Missouri, Western Division.

March 4, 1981.

As Amended April 3, 1981.

James H. Thompson, Jr., Kansas City, Mo., for plaintiff.

Douglas L. Bowen, Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR PLAINTIFF IN THE SUM OF $10,-550.64

DENNIS J. STEWART, Bankruptcy Judge.

This is an action brought by the plaintiff trustee in bankruptcy to recover sums which the defendant[1] had listed as credits to the debtor on a certain account with the

---

1. The plaintiff trustee, in filing his complaint in this matter, named the Nationwide Financial Corporation as the defendant. On August 15, 1980, Citicorp Person-to-Person Financial Center, Inc., filed an answer stating that, as "the assignee of Nationwide Financial Corporation of Missouri," it was the proper party defendant. By order of September 11, 1980, the court substituted Citicorp Person-to-Person Financial Center, Inc., for Nationwide Financial Corporation as the proper party defendant.

debtor. After the joining of the issues by the pleadings, the trial of the merits of this action was conducted by the court of bankruptcy on the dates of September 24, 1980, and October 16, 1980. The plaintiff appeared personally and as his own counsel on both occasions. The defendant appeared by Douglas L. Bowen, Esquire, its counsel.

The evidence which was adduced by the parties to this action depicts a comparatively simple and straightforward situation. According to the testimony of Stanley A. Leber, the branch manager of the defendant, the subject matter of this action is called a "dealer reserve fund" and consists only of "paper transactions" listing the amounts which are allocated by the defendant (and its assignor) as credits to a given salesman or retailer (such as, according to the testimony of Mr. Leber, the debtor was in relation to the defendant) and which are simply "paper credits" which were never intended to be paid to the debtor. Rather, according to Mr. Leber's testimony, the account now sued upon by the trustee in bankruptcy is simply a statement of certain debits and credits which the defendant allocates for service charges and the like on the various rental units which are sold by the particular salesman or retailer. If the total of the account exceeds the amount allotted for the service charges, the debtor retailer was obligated by the contract between the parties to pay the excess to the defendant. This is demonstrated by a written contractual provision (as well as by Mr. Leber's uncontradicted and unobjected-to testimony). In this regard, the contract which the debtor executed in favor of Nationwide Financial Corporation, the defendant's predecessor,[2] relevantly provides as follows:

"If for any reason you (the defendant) discontinue purchasing contracts from us, you may hold and apply all reserves ... to any indebtedness due or to become due from us to you until all contracts purchased by you from us have been liquidated."

It is the defendant's contention, however, that there is no explicit provision in the contract for payment of the excess in the reserve account to the dealer or retailer (as noted above, the position which the debtor occupied in relation to the defendant). According to the testimony of Mr. Leber, the reason for this omission is that the reserve account here in suit does not represent or contain any contribution of money by the dealer and, in this respect, materially differs from a "loss reserve" account which is composed of the dealer's money.

■ This interpretation tends to be contradicted by the express wording of the governing contract between the parties to the following effect:

"The excess, if any, of the finance charge included by us in each contract over your charges therefor shall be credited by you to an account or accounts maintained on your books and records designated as our Regular Reserve and our Hold Reserve."

From this, and from the other documents adduced in evidence in this action indicating that the dealer reserve account here in question is the "Hold Reserve" account referred to in the above paragraph, it appears that the account is supplied from finance charges exacted by the dealer over and above those which were to be taken by defendant or its predecessor. It would seem, even in the absence of an express contractual provision, the natural end result of these provisions that any amounts not paid out of the denominated reserve accounts should be paid to the dealers unless, in accordance with the provisions first quoted above, the monies in the funds should be paid over to the defendant.

But the contract which has been adduced in evidence by the defendant as the governing instrument in this action has at least one explicit and specific provision governing disposition of the funds in the Hold Reserve Account. It is to the effect that:

"Accumulated credits to our Hold Reserve Account in excess of $4,000 of the then aggregate total of payments of all contracts purchased by you from us shall be paid to us monthly as of fiscal 25th month end."

2. See note 1, *supra*.

It would appear from the clear letter of this provision that, as of the 25th of any month, the debtor was entitled to have any and all of the excess in the Hold Reserve fund over the amount of $4,000. It further appears that, on the date of the order for relief in this case, October 12, 1979, the balance in the Hold Reserve account was the sum of $10,550.64. As of the 25th of the prior month, it would appear that the balance was the same. Thus, according to the literal provisions of the governing contract, it would appear that, as of the date of the petition for relief in this case, the debtor had a clear contract right to at least the sum of $6,550.64, which constituted the excess in the Hold Reserve Account. And thus, under the provisions of section 541 of the Bankruptcy Code, vesting in the debtor's trustee in bankruptcy and his bankruptcy estate "all legal or equitable interests of the debtor in property as of the commencement of the case," this sum of $6,550.64 should be regarded as the property of the estate.

## II

■ It is a basic contention of the defendant, however, that, even if the court should find that some or all of the Hold Reserve Account is due and owing to the bankruptcy estate, it is entitled to a setoff on account of a $13,500 loss which it sustained on the repossession and resale of a mobile home which had been sold by the debtor to Robert E. and Janet M. Bair. In this regard, in its posttrial brief, the defendant states as follows:

"Citicorp presented evidence of a loss sustained from a particular contract purchased from the debtor. Citicorp showed that misrepresentations by the debtor to the Bairs exposed Citicorp to a potential liability by claims made by the Bairs on the basis of the debtor's conduct. A settlement was reached and Citicorp obtained a release of claims by the Bairs and obtained possession of the unit and held a private sale to subsequently establish an approximate $13,500.00 deficiency balance. Demand was unsuccessfully made upon the debtor for repurchase of the contract for the remaining balance ..."

But there was no direct evidence of any misrepresentation of the debtor to the Bairs which resulted in the $13,500 loss in this regard. All that was shown by the defendant in this regard is that it repossessed the Bair unit and resold it at a loss of $13,500. Otherwise, only the most conclusionary contentions were stated as to the basis for the debtor's responsibility for the loss. Therefore, the court set an adjourned hearing specially for the purpose of granting the defendant an opportunity to demonstrate the liability of the debtor for the $13,500 loss. But the defendant declined to adduce evidence at the adjourned hearing, instead adverting to the contractual provisions by means of which the debtor warranted representations by the purchasers that the mobile home was purchased for "personal" use.[3] But, even if these provisions are ap-

---

**3.** In its posttrial brief, the defendant states that "the question of an off-set against any award to the Trustee (for) the Bair loss of $13,500" is "(a) collateral side-issue." In the same brief, it is noted that, in the retail installment contract executed by the Bairs on August 8, 1978, in favor of American Motor Home Rentals, Inc., the Bairs represent that the "use for which (the motor home was) purchased" is "personal"; that, in turn, the debtor, in the "recreational vehicle dealer agreement without recourse" which it executed in favor of Nationwide Financial Corporation of Missouri (defendant's assignor) on April 6, 1978, undertook to hold the defendant's assignor harmless in any instance in which it should be "required to pay any claim of a customer occasioned by any defense the customer may have to a contract purchased under this agreement and arising out of the sale

of property described above" and further, in the same agreement, "warrant(ed) ... that the facts set forth in each contract will be true"; that, by reason of these agreements and warranties, "the combined effect ... is to clearly impose strict liability on debtor for the Bair loss"; and that, according to the defendant's view of the evidence in this action, "(t)he Bair contract involved a claim of a customer on the basis of the conduct of the debtor which breached the warranties the debtor made as to the Bair contract." But, as is noted in the text of this memorandum, there is no evidence of the warranting of a misrepresentation which was false when it was made and no proof that the $13,500 loss was caused by the misrepresentation. Nor is there any evidence as to when the loss was actually suffered. And this failure of proof took place in the face of the

plicable,[4] there has been no showing that, in fact, there was any misrepresentation by either the Bairs or the debtor and, if so, that the $13,500 loss was the result of that misrepresentation. As noted above, all that has been shown in this regard, despite the court's granting the defendant an explicit evidentiary opportunity, is that the defendant's witness testified that the $13,500 loss resulted from the non-personal use of the mobile home by the Bairs. This is insufficient, without more, to demonstrate that somehow the debtor was liable for that amount to the defendant because of its warranting the representation of the Bairs that the trailer was being used for "personal" purposes. There is not even any showing that, at the time the representations were made, they were not true, or that they necessitated the repossession of the mobile home.[5] And finally, there is no showing of the date upon which the $13,500 loss was realized and this is a matter, as is further pointed out below, of material importance.

■ For failure of the defendant to offer evidence, in the face of an offer to do so afforded by the court, this claim of a right to setoff must be denied. The burden of production of evidence and of persuasion on the setoff issue falls upon the creditor asserting the right to setoff. That burden has not been met in a case such as that at bar in which evidence has not been adduced to demonstrate that the debtor warranted any misrepresentation by the Bairs nor, if it did, that the warranty was the proximate cause of the $13,500 loss.

Further, even if that burden had in all other respects been met, there is no showing that the loss was incurred prior to the date of bankruptcy. No certain testimony has been adduced which unequivocally shows that the resale was accomplished, at a loss of $13,500, prior to the date of the filing of the petition for relief in this chapter 7 case.[6] And this is a material omission for, under the provisions of section 553 of the Bankruptcy Code, the right of setoff "comprehends only 'mutual debts and claims' and ... debts owed to and claims against the debtor prior to bankruptcy cannot be set off against debts owed to or claims against the debtor's estate (as represented by the trustee) arising after bankruptcy." 4 Collier on Bankruptcy para. 553.10(1), p. 553–49 (1980).

### III

■ Above, the court has reached the conclusion that all the monies in the Hold Reserve Account over the sum of $4,000 should be paid to the bankruptcy estate as a matter of clear contract right. It is necessary to determine what is to happen to the remaining $4,000 when the business of the debtor has been terminated by the petition for relief in these bankruptcy proceedings. The wording of the governing contract also compels the payment of that $4,000 in the Hold Reserve Account to the estate in bankruptcy pursuant to section 541(a)(1) of the Bankruptcy Code, which provides that a debtor's estate "is comprised of ... all legal or equitable interests of the debtor in property." "(T)his paragraph ... include(s) choses in action and claims by the debtor against others." Legislative History to section 541 of the Bankruptcy Code. For that wording makes it clear that, of the

court's setting an adjourned evidentiary hearing specially for the purpose of granting defendant an opportunity to offer evidence on the Bair matter.

4. See note 3, *supra.* Even if the contractual provisions, as the defendant asserts, impose "strict liability," the evidence does not sufficiently show that they are applicable.

5. The absence of evidence leaves a variety of situations within the realm of possibility, any one of which would prevent recovery by the defendant from the debtor (or his trustee) on account of the $13,500 loss suffered in the Bair

matter. For the contractual provisions, for instance, appear to leave the matter in doubt as to whether the debtor would be responsible for the purchasers' *changing* the use, without notice, from personal to non-personal after they had truthfully stated in the initial contract that they were purchasing it for "personal" use.

6. The ambiguity in this regard is added to by the fact that, according to the documentary evidence adduced, including the account sheet for the Hold Reserve Account, the defendant made no previous claim for the loss prior to the date of the petition for relief in this case.

monies in the Hold Reserve Account, the defendant is to retain only those which can fairly be said to be due the defendant under the contract from the debtor.[7] As noted above, the necessary implication of these explicit and specific provisions is that the remainder of the monies is to be returned to the debtor.[8] Further, on the basis of the evidence which has been adduced in the hearing, as of the date of the order for relief in these proceedings, the events which would further reduce the balance of the Hold Reserve Account had not yet occurred. According to the testimony of Mr. Leber, some had occurred after the date of the order for relief in this case[9] and others were, as of the dates of the hearing of this action, expected to happen.[10] But this account must be reckoned to have been terminated as of the date of the order for relief herein. For, as noted above, under section 553 of the Bankruptcy Code, a set-off against the bankruptcy estate cannot be exercised on the basis of a claim arising after bankruptcy.[11] The legal contentions submitted by the defendant in its posttrial brief are, for the reasons stated in the marginal note, considered to be without merit.[12]

### IV

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the plaintiff have and recover the sum of $10,-550.64 from the defendant plus his reasonable costs.

---

7. See passage quoted from the contract at page 54 of the text of this memorandum.

8. See considerations stated at pages 54 and 55 of the text of this memorandum.

9. The evidence which has been adduced leaves the dates of many of these alleged deductions uncertain. But the documentary evidence, including the account sheet for the Hold Reserve Account, indicates that all the deductions which should have been taken prior to bankruptcy had already been taken, leaving the amount for which judgment is being rendered in this action.

10. See the posttrial brief of the defendant which was filed in this action on October 27, 1980, to the following effect: "Through these exhibits (the contracts involved), Citicorp established that there was no legal or equitable interest of the debtor in property as of the commencement of the case, due to the number of yet outstanding contracts and liabilities of the debtor for *current losses* and *future losses* had by Citicorp. Since the trustee takes no greater rights than the debtor had itself on the

date the case was commenced, there was no property for the trustee to take." (Emphasis added.) But, as is elsewhere explained in the text of this memorandum, the current and future losses cannot be setoff against the trustee's right to the fund on the date of bankruptcy. Postbankruptcy claims which are unliquidated as of the date of bankruptcy cannot be made the subject of a valid setoff. 4 Collier on Bankruptcy para. 68.10, p. 897 (1978). See also note 11, *infra*.

11. Unlike an absolute but contingent liability, an unliquidated and uncertain liability occurring after the date of the petition for relief cannot be the subject of a setoff. 4 Collier on Bankruptcy para. 553.10, p. 553–49 (1980).

12. The last defense raised by the defendant is that the account was unilaterally "frozen" by it prior to the date of the petition for relief. There appears to be no authorization for such action in the provisions of the governing contract.