In re AMCO PRODUCTS, INC., Debtor.

John R. STONITSCH, Trustee, Plaintiff,

v.

COMMERCE BANK OF KANSAS CITY, Defendant.

Bankruptcy No. 79–01312–W–1.
Adv. No. 80–0027.

United States Bankruptcy Court,
W. D. Missouri, W. D.

Feb. 19, 1982.

Frank W. Koger, Kansas City, Mo., for defendant.

John R. Stonitsch, Kansas City, Mo., for Trustee.

### TURNOVER ORDER

FRANK P. BARKER, Jr., Chief Judge.

This is an action brought by the Trustee of the bankruptcy estate of AMCO Products, Inc. to compel the turnover of certain property held by the defendant, to the bankruptcy estate.

On October 1, 1976 the debtor corporation and defendant set up, via a "Dealer Agreement", a dealer reserve account—# 339–00170–044. Funds were deposited in this account, without the right of withdrawal, for the purpose of charge off or loss reserve, by Commerce Bank against accounts, or dealer paper, purchased by the Bank at a discount from the debtor, which were determined to be uncollectible.

Upon default by the consumer, the Commerce Bank would debit said account to make up for the loss. While the dealer paper was outstanding, there was no right of withdrawal by the debtor corporation. Further, if the reserve account fell below 5% of the aggregate balance of all contracts outstanding, the debtor corporation had to make deposits to replenish the account.

At the time of the filing of the bankruptcy case October 12, 1979, $32,162.52 remained in this account.

The Trustee argues that the monies in this account are property of the estate and also all interest that has accrued from such. The Trustee prays for an order directing the defendant to turnover this property.

The Bank contends that it is not the property of the debtor and would not become the property of the debtor until all the conditions of the reserve agreement were met. The Bank contends that these conditions cannot be met prior to the termination of all notes and contracts purchased by the Bank from the debtor.

The Bank also claims a security interest in the fund, and a right of set-off as losses occur on the accounts purchased from the debtor.

As the result of a pre-trial conference it was determined that an evidentiary hearing was not necessary because of the stipulations filed. The parties have submitted briefs and reply briefs on the following issues:

(1) Whether a bona fide dealer reserve account maintained by a lender is property of the estate until the expiration date of the last contract or a time when a surplus exists.

(2) Whether Commerce Bank has the right of setoff.

Prior to addressing these issues, another issue must be addressed. The defendant argues that it applied for a lifting of the automatic stay, and that the plaintiff failed to oppose the defendant's application, nor attempted to provide the defendant with a hearing. The defendant thus argues that the plaintiff's lack of action estops him from claiming the stay is not lifted and the relief sought has not been granted by operation of law.

■ The defendant's request was found in the prayer of its answer. A request for lifting of the automatic stay under 11 U.S.C. § 362 must be explicit, not camouflaged in the body of a party's prayer. Further, no specific grounds were enumerated in the pleading in regard to such request. The automatic stay was not lifted by operation of law, based on the manner in which the relief was requested. This issue is found against the defendant.

The first major issue to be addressed is whether the dealer account is property of the debtor.

The agreement in question appears to grant the Bank a security interest in the account in question. The "Dealer Agreement" at paragraph 3 states:

"In the event the Bank shall purchase contracts from the Dealer for less than face value less the Bank's portion of the finance charge the Bank will make an entry on its books indicating the potential interest of the Dealer. Any potential interest shall be held by the Bank in a "Differential Account" and the same is hereby assigned to the Bank as security for any and all obligations of the Dealer, and shall not be regarded as a deposit."

■ The Bankruptcy Code follows the "strong arm" clause of the former Act by giving the trustee the rights and powers of a judicial lien creditor as of the date of bankruptcy. 11 U.S.C. § 544(a)(1). Specifically, the trustee may avoid any transfer of property or obligation incurred by the debtor that would be avoidable by a creditor on a simple contract who, at the time of the commencement of the case, extends credit and obtains a judicial lien on all of the debtor's property, whether or not such a creditor exists.

■ Pursuant to Article 9 of the Uniform Commercial Code, (U.C.C. § 9–301(1)(b)), a judicial lien creditor has priority over an unperfected security interest.

The defendant contends that the Trustee cannot reach these funds because the defendant is a perfected secured party in physical possession of the security.

§ 400.9–102 R.S.Mo. 1969 provides that Article 9 of the U.C.C. applies to any transaction, regardless of form, intended to create a security interest in personal property.

However, even though a transaction falls within the scope of § 9–102, it still may be excluded from Article 9 as a matter of public policy. A laundry list of express exclusions is set forth in § 400.9–104, which states in pertinent part:

"This article does not apply—. . .

(k) to a transfer in whole or in part of any of the following: any claim arising out of tort; any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization."

Comment #7 of U.C.C. 9–104 reiterates this fact.

This Court agrees with the recent case of *Duncan Box & Lumber Co. v. Applied Energies, Inc.*, 29 U.C.C. 1731, 270 S.E.2d 140 (W.Va.1980) that the U.C.C. is inapplicable to the transfer of a deposit account. The question presented to the West Virginia Supreme Court of Appeals was whether under the U.C.C. a bank could obtain a security interest in a depositor's reserve account which would prevail over a suggested execution issued by a judgment creditor of the depositor.

In that case, the First Huntington National Bank [hereinafter Bank] agreed to finance, through a deed of trust, the purchase by Applied Energies, Inc. [hereinafter Debtor] of a tract of land. The purpose of the loan was to subdivide the tract into lots for mobile home dwellers. Debtor sought

further financing from the Bank for resale of the lots to individual purchasers. The proposal was that Debtor would assign the purchaser's promissory notes, secured by deeds of trust, to the Bank.

The Bank agreed to this arrangement, but insisted on security in the form of a "reserve account" to be controlled by the Bank which would, in effect, guarantee the Bank the right to a reserve of 25% of the unpaid balance of the outstanding notes. The rules governing the reserve account were established by written agreement between the Bank and the Debtor.

Two creditors obtained judgments against the Debtor and proceeded by suggestee execution to attach the reserve account. The Bank asserted that the Debtor "had no interest or property in the reserve account" and that the Bank "was not in possession of any property belonging to the Debtor."

One creditor argued that the Bank had no lien because it failed to file a financing statement under 9–302 of the U.C.C. The Bank retorted that possession was sufficient to secure its interest in the collateral.

The Court, however, found that their arguments missed the critical point of the case. Citing § 9–104(k) and Comment #7 following that section, the Court stated:

> "The upshot is that the U.C.C. does not apply to a pledge or transfer of a bank account, and thus the validity of the transaction is tested, not by the U.C.C., but under the common law. This is the conclusion reached by courts that have passed on the question." *Duncan* at 1735

Citing *Walton v. Piqua State Bank*, 204 Kan. 741, 754, 466 P.2d 316, 327, 7 U.C.C. Rep. 1067 (1970) which involved a purported pledge of funds in a passbook savings account. That court, after stating the statutory exceptions, acknowledged the inapplicability of the U.C.C.:

> "Hence, no provisions of the Uniform Commercial Code are applicable to the question presented, and we refer to our decisions and to the Restatement of the Law, Security, as they apply to common law."

See also *Iser Electric Co. v. Ingran Construction Co.*, 48 Ill.App.3d 110, 6 Ill.Dec. 136, 362 N.E.2d 771, 24 U.C.C.Rep. 749 (1970).

For the most part, however, certificates of deposit have been held to be not intended for exclusion under Article 9. *Wightman v. American National Bank of Riverton*, 610 P.2d 1001, 29 U.C.C.Rep. 251 (Wyo.1980); *Citizens National Bank of Orlando v. Bornstein*, 374 So.2d 6, 27 U.C.C.Rep. 242 (Fla. 1979); *Southview Corp. v. Kleberg First National Bank*, 512 S.W.2d 817, 15 U.C.C. Rep. 408 (Tex.Civ.App.1974); and *First National Bank in Grand Prairie v. Lone Star Life Ins. Co.*, 524 S.W.2d 525, 17 U.C.C.Rep. 835 (Tex.Civ.App.1975).

In fact, the 1972 version of § 9–104(*l*), which has not yet been adopted in Missouri, expressly defines the term "deposit account" to exclude certificates of deposit.

Likewise, the case law—*Morris Plan Co. of St. Joseph v. Broadway National Bank of Kansas City*, 598 S.W.2d 557, 28 U.C.C.Rep. 1112 (Mo.App.1980); *Realty Growth Investors v. Commercial and Industrial Bank of Memphis, Tennessee*, 370 So.2d 297, 26 U.C.C.Rep. 1259 (Ala.Civ.App.1979); and *Domain Industries, Inc. v. First Security Bank & Trust Co.*, 230 N.W.2d 165, 16 U.C.C.Rep. 1417 (Iowa 1975) indicates that § 9–104(k) does not apply to bank deposits which are the proceeds of collateral.

Again, the 1972 version of § 9–104(*l*) makes it clear that deposit accounts which constitute proceeds under § 9–306 are not included.

Since the U.C.C. is not applicable to the situation before this Court, and there appears to be no current statutory requirement, (i.e. as in assignment of wages or judgments or various statutory liens), we are forced to look at the common law interpretation of this issue.

As a general rule a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply the debtor's deposits on his debts to the bank as they become

due. *Adelstein v. Jefferson Bank & Trust Co.*, 377 S.W.2d 247 (Mo.1964).

While money on deposit in a bank is commonly considered to be the property of the depositor and the bank is considered to have a lien on the deposits for the purpose of repayment of indebtedness owed it, (*Muench v. Valley National Bank*, 11 Mo. App. 144 (1881); *First National Bank of Sharon v. City National Bank*, 102 Mo.App. 357, 76 S.W. 489 (1903); *Lebrecht v. New State Bank*, 229 S.W. 285 (Mo.App.1921)), this is not an accurate description of the situation. The more accurate statement is that this right of the bank is not really in the nature of a lien, but is rather a right of setoff or application of payments. *Cochrane v. First State Bank*, 198 Mo.App. 619, 201 S.W. 572, 574 (1918).

■ The reason for this is that funds on general deposit in a bank become the property of the bank, and the legal effect of the deposit is to create a debtor-creditor relation between the depositor and the bank. *Matter of Parker's Estate*, 536 S.W.2d 25 (Mo.1976); *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 396 S.W.2d 570 (Mo.1965); and *Hilke v. Bank of Wash.*, 251 S.W.2d 963 (Mo.App.1952), 10 Am. Jur.2d "Banks" § 399; 9 C.J.S. "Banks and Banking" § 267(a). As such, the bank cannot have a lien on its own property. 10 Am.Jur.2d "Banks" § 666 (1963).

The recent cases decided under Missouri law view the right as one of setoff. *Adelstein v. Jefferson City Bank & Trust Co.*, 377 S.W.2d 247 (Mo.1964); *First National Bank of Clinton v. Julian*, 383 F.2d 329 (8th Cir. 1967); *United States v. St. John's Community Bank*, 302 F.Supp. 149 (E.D.Mo. 1969); *Universal C.I.T. Corporation v. Farmers Bank of Portageville*, 358 F.Supp. 317 (E.D.Mo.1973).

In the case of *First National Bank of Clinton v. Julian*, (Trustee), *supra*, the 8th Circuit was faced with a similar set of facts as this Court. The case was an appeal from a turnover order of a Referee that had been affirmed by the District Court.

The bankrupt, Roby C. Woody [hereinafter Woody] operated a franchise Cadillac and Oldsmobile dealership in Clinton, Missouri. Woody "floor planned" his used car inventory with the First National Bank of Clinton [hereinafter Bank]. The Bank also purchased some of the retail financing paper on cars sold by Woody.

On July 8, 1959 the Bank held thirteen notes and chattel mortgages on floor plan cars. On about the same date, the Bank learned that a replevin suit was being filed against Woody, and that Woody was in financial trouble. Feeling insecure on its indebtedness, the Bank, under the provisions of its notes, declared all indebtedness due and payable. The Bank repossessed several of the cars, sold them, and applied the proceeds against the indebtedness.

The Bank also applied as a setoff, a checking account of Woody's designated as "Reserve Account". This was a separate account set up by Woody with the Bank in which the Bank would deposit the differential between the Bank's interest rate to Woody, and the interest rate actually received on the retail paper that Woody had sold to the Bank.

"The purpose of the "Reserve Account", according to the Bank, was to provide additional security to the Bank on Woody's actual and contingent indebtedness, and Woody had to receive approval of a bank official before any checks could be drawn against this account. Woody testified that this reserve checking account was additional security for his recourse paper, but he couldn't say "Yes or No" as to whether this account was security for any indebtedness the Bank might have against him." At page 332–333.

On July 14, 1959 Woody was adjudicated bankrupt. The Referee found that the bank account denominated as "Reserve Account" was a special account established for the purpose of paying defaults "in retail recourse paper purchased by the bank from Woody", that "the relation of debtor and creditor did not exist between them with respect to said account"; and ordered the

$2,625.89 setoff on this account turned over to the trustee.

The Court of Appeals reversed stating:

However, as a matter of law, the account was a general checking account created for the purpose of securing the Bank against losses of some kind. The only restriction on the account was that Woody could not draw checks on it without the approval of the Bank. There was no agreement that the account was to be kept separate and isolated from the other checking accounts in the Bank. That is, the Bank did not and was not under any obligation to hold this money separate and apart from its other funds and to refrain from using the funds in its business. This type of reserve account constitutes a general deposit for a special purpose which creates a general deposit that the Bank may use in its regular business operations, the Bank becoming a debtor in the amount of the deposit. See 3 Scott on Trusts §§ 526 and 530 (1939).

Under Missouri law, to be a trust deposit so that the title to the funds deposited does not pass to the bank and no debtor-creditor relationship is created, there must be "an agreement, express or implied, that it shall not be comingled with the other assets of the bank and used as its own, but shall be kept intact as a special deposit for a specific purpose." *Security Nat. Bank Savings & Trust Co. v. Moberly*, 340 Mo. 95, 101 S.W.2d 33, 37 (Mo.1936).

The determinative factor of whether a deposit is special in the connotation that it does not create a debtor-creditor relationship "is the right or not of the bank to so commingle and use the deposit". *Vandivort v. Sturdivant Bank*, 77 S.W.2d 484 (Mo.App.1934). The *Vandivort* case was expressly approved by the Supreme Court of Missouri in the Security Nat. Bank case. The *Security Nat. Bank* case, supra, held that funds deposited by a trustee in a special account designated as "Trustee's Account", the deposits being made for the sole and exclusive purpose of paying the principal and interest on a mortgage was not a "special deposit", but

constituted a general deposit. That case also pointed out that Missouri is in harmony with the greater weight of authority represented in Restatement Trusts § 12 comment (h):

"If money is deposited in a bank for a special purpose the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

Restatement of Trusts, 2d contains with some elaboration the same principle in § 12, comment (1):

"A general deposit of money in a commercial bank does not create a trust, but a relation of debtor and creditor * * *. This is true although the depositor is a trustee * * *. If money is deposited in a bank for a special purpose, the bank is not a trustee or bailee of the money unless it is the clear understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

The general rule is that a deposit in a bank is presumed to be a general deposit and that the relationship created between the bank and the depositor is that of debtor and creditor, and the burden of proving that a deposit is for a special purpose is on the party seeking to establish it as a special deposit. *Hershey v. Northern Trust Co.*, 342 Mo. 90, 112 S.W.2d 545, 549 (Mo.1937). To the same effect is the general statement in 10 Am. Jur.2d Banks § 363 which reads in part:

"In the absence of an agreement and proof to the contrary, a deposit is presumed to be general rather than special, and the burden evolves upon the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact * * *." *Union Properties v. Baldwin Bros. Co.*, 141 Ohio State 303, 47 N.E.2d 983, 149 A.L.R. 725.

There is no evidence in the record of any agreement, express or implied, that the funds deposited in this reserve account were to be kept intact, separate and apart from the other funds of the Bank, and the Referee's ruling in that respect is clearly erroneous. The account constituting a general deposit is subject to the Bank's right of set off as recognized at common law. *Adelstein v. Jefferson Bank & Trust Company*, 377 S.W.2d 247, 251 (Mo.1964); *Cochrane v. First State Bank of Pickton*, 198 Mo.App. 619, 201 S.W. 572 (1918). At pages 337–338.

■ This Court in the course of its opinion preparation, found it necessary to hold a short evidentiary hearing to resolve the issue of what the defendant did with the money after it was deposited in the dealer reserve account.

The testimony presented indicated that the money was commingled with the Bank's other assets and used to make loans, etc. This being the case, this type of reserve account constitutes a general deposit for a specific purpose. As such, the Bank becomes a debtor in the amount of the deposit.

This Court thus finds the account to be the property of the bankruptcy estate.

Had this account been a special deposit, the Bank could have obtained a lien against the property. However, since this account was a general deposit for a specific purpose, setoff is the only right to which the Bank is entitled.

11 U.S.C. § 553 governs setoff under the Bankruptcy Reform Act. § 553(a) states:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title:

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B) (i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition:

(B) while the debtor was insolvent: and

(C) for the purpose of obtaining a right of setoff against the debtor.

11 U.S.C. § 553 is not however an independent source of the right of setoff; it only preserves whatever setoff right the creditor can claim under state statutory and case law.

■ It has been clearly established, that a bank has no right of setoff upon the deposit of its customer for an indebtedness owed to the bank unless the debt has matured. *Prince v. West End Installation Service, Inc.*, 575 S.W.2d 831 (Mo.App.1978); *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d 710 (Mo.App.1978).

The case of *Matter of American Home Rentals*, 10 B.R. 53 (D.C.W.D.Mo.1981) has recently addressed this issue. The subject matter of that action was a dealer reserve fund as well.

In that case the debtor executed a contract in favor of Nationwide Financial Corporation which provided in part:

"If for any reason you (the defendant) discontinue purchasing contracts from us, you may hold and apply all reserves . . . to any indebtedness due or to become due from us to you until all contracts purchased by you from us have been liquidated." At 54.

Judge Stewart held that the defendant was not entitled to a setoff. He found that (1) the defendant had not met his burden of proof as to its assertion of the right of setoff and (2) stated that:

" . . . even if that burden had in all other aspects been met, there is no showing that the loss was incurred prior to the date of bankruptcy. No certain testimony has been adduced which unequivocally shows that the resale was accomplished, at a loss of $13,500, prior to the date of the filing of the petition for relief in this Chapter 7 case. And this is a material omission for, under the provisions of section 553 of the Bankruptcy Code, the right of setoff "comprehends only 'mutual debts and claims' and . . . debts owed to and claims against the debtor prior to bankruptcy cannot be set off against debts owed to or claims against the debtor's estate (as represented by the trustee) arising after bankruptcy." 4 Collier on Bankruptcy para. 553.10(1), p. 553–49 (1980). At 54.

Other courts have held that 11 U.S.C. § 553 comprehends only "mutual debts and claims". *In re Howell*, 4 B.R. 102 (D.C.B.C. Tenn.1980); and *In re Shopper's Paradise, Inc.*, 8 B.R. 271 (D.C.S.D.N.Y.1980).

■ In the case at bar, the events that would entitle the Bank to dip into the reserve account occurred after the date of the Order of Relief in the case, and others, the defendant states in its brief, " . . . will continue to occur."

As Judge Stewart stated in *American Home Rentals, supra*, at 57:

" . . . this account must be reckoned to have been terminated as of the date of the order for relief herein. For, as noted above, under section 553 of the Bankruptcy Code, a setoff against the bankruptcy estate cannot be exercised on the basis of a claim arising after bankruptcy."

It is thus ORDERED, ADJUDGED AND DECREED, that the Commerce Bank of Kansas City turnover to John R. Stonitsch, as Trustee for the Bankruptcy Estate of AMCO Products, Inc., the sum of $32,-162.52, plus interest at the rate of 9% from October 12, 1979.