Helen Szot Murukas, Plaintiff-Appellant, v. James Murukas, Individually and as Administrator of the Estate of Peter Murukas, Deceased, et al., Defendants.
On Petition of John J. Enright, for Allowance of Attorneys' Fees.
John J. Enright, Petitioner-Appellee, v. Helen Szot Murukas and James Murukas, Administrator of the Estate of Peter Murukas, Deceased, Respondents-Appellants.

Gen. No. 52,713.

First District, Fourth Division.

September 11, 1968.

Anagnost & Anagnost, of Chicago (Catherine Cook Anagnost, Gerald M. Chapman, and Edmond Mosley, of counsel), for appellants.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Owen Rall, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Respondents appeal from a judgment directing Helen Szot Murukas to pay petitioner $3,919.42 as attorney fees and also directing James Murukas, as Administrator of the Estate of Peter Murukas, to pay to petitioner one-third of any and all sums thereafter payable or distributable to Helen Szot Murukas from said estate.[1] On appeal they argue that the court lacked power to impose a lien on future distributions from the estate on behalf of the attorney, Enright, and that the court erred in its construction of the contract.

---

[1] Petitioner also claimed $3,000 for attorney's fees for services performed in a partition suit and for which he had filed an attorney's lien. This claim was withdrawn without prejudice.

On August 29, 1967, John J. Enright filed his petition in case No. 63 S 24501 of the Circuit Court of Cook County entitled Helen Szot Murukas v. James Murukas, et al., requesting attorney fees in accordance with the following written contract:

I hereby employ John J. Enright, as my attorney, to represent me in the settlement, adjustment or prosecution of my claim against the Estate of Peter Murukas, Deceased, 63 P 2501, Docket 652, Page 340, now pending in the Probate Court of Cook County, Illinois, and agree to pay the said John J. Enright, as compensation for his services, and I hereby assign to him One-third per cent of any sum obtained or recovered therefrom by suit, settlement or otherwise.

I further agree to reimburse the said John J. Enright for any and all advances, costs and expenses, if any, paid or incurred by the said John J. Enright for me in connection with the handling of the above entitled matter.

Dated at Chicago, Illinois this 2nd day of July, 1963.

/s/ Helen Szot Murukas
HELEN SZOT MURUKAS

The petition further alleged that on October 25, 1965, a consent decree was entered in the original suit granting Helen Murukas, the plaintiff, forty percent of all assets owned by the deceased Peter Murukas and further provided:

This court hereby reserved jurisdiction herein of the parties hereto and of the subject matter hereof for the purpose of carrying out the intent and meaning of this order for the disbursements and distribution to HELEN SZOT MURUKAS of the prop-

344

erty hereinabove described and for the payment of fees, court costs and other expenses due John J. Enright, attorney, out of the share of HELEN SZOT MURUKAS, and for such other, further and additional orders as may be necessary to carry out and enforce this order.

The petition also stated that Helen Murukas had received $11,758.26 from the estate and has refused to pay petitioner his one-third share thereof.

In her answer respondent Helen Murukus admitted the execution of the agreement, but claimed it was for "one-third percent" and not for one-third of the recovered amount. She also alleged that the court had no jurisdiction to enter any order for attorney fees in an ancillary action and also requested that petitioner repay her the sum of $10,480.20 theretofore paid by her to the petitioner. (This sum represented one-third of $31,758.26 collected by her minus one-third of one percent and court costs.) [2]

The trial judge ordered the payment of $3,919.42 to petitioner and also ordered one-third of future distributions to Helen Murukas to be paid to petitioner. From these orders respondents appealed.

■ Respondents first contend that the court lacked power to impose a lien on the future distributions of the estate. They argue that ordering the administrator to pay a percentage of all disbursements to Enright establishes a lien on the property, that there are only two kinds of liens which a court may impose on property not in the possession of the attorney to secure to him his fees and that neither is applicable here. The first is the statutory attorney's lien and the second is the equitable lien. Respondents concede that an attorney

---

[2] This claim was not directly passed upon by the trial judge and respondents' notice of appeal ignores it.

can acquire an equitable lien by an agreement with his client assigning to him a portion of a specific fund. See Lewis v. Braun, 356 Ill 467, 191 NE 56. They urge, however, that the court had no power to impose such a lien in the instant case since to do so the court must have jurisdiction of the fund to which the agreement applies. They argue that "since all the proceeds constituting the subject matter of this action were subject to the jurisdiction of the Probate Court in the Estate of Peter Murukas" the chancery court had no jurisdiction. The question of the separate jurisdictions of the different branches of the Circuit Court was discussed in People ex rel. Dahm v. Corcoran, 39 Ill2d 233, 234 NE2d 794. There the court referred to a prior opinion in that case which had held that the case was beyond the jurisdiction of the Probate Court. After remandment and trial the Supreme Court in Corcoran, supra, stated:

> When that opinion was handed down a separate tribunal was necessary because the probate court was then a separate court of limited jurisdiction, established under section 20 of article VI of the constitution of 1870, and had no general equitable jurisdiction. See, e. g., Roffmann v. Roffmann, 384 Ill 315, 321-322; In re Estate of Mortenson, 248 Ill 520.
>
> On January 1, 1964, after the cause had been remanded, the new article VI of the constitution became effective. That new judicial article abolished probate courts and all other courts of limited jurisdiction, and transferred matters pending in those courts to a court with "unlimited original jurisdiction of all justiciable matters." (Ill Const, art VI, sec 9; sched par 5.) The barriers to the jurisdiction of the probate court that existed when this court's decision was rendered have thus been removed by constitutional amendment.

346

In conclusion, the court stated, in rejecting the contention that Judge Corcoran was without jurisdiction:

> The respondent is sitting as a judge of the circuit court, which has jurisdiction of all justiciable matters.

■ Since the Circuit Court (Probate Division) retained jurisdiction under the consent decree of October 25, 1965, to determine petitioner's attorney's fees, we find that the Circuit Court (Chancery Division) had jurisdiction to make this determination.

■ Respondents next contend that the court erred in construing "one-third percent" to mean one-third of any recovery since the words were not ambiguous and should therefore be strictly construed. We believe the principle enunciated in Knorr v. White Bros. Trucking Co., 79 Ill App2d 471, 224 NE2d 299, is more appropriate here. In that case plaintiff had a truck leasing agreement with defendant providing for "75% of the revenue less trailer rental, if applicable." Over a period of time defendant deducted "unloading charges" without objection. The trial court held that under the contract these charges were not deductible. The Appellate Court reversed, stating:

> There is no dispute as to the applicable rule of law that a contract is to be enforced according to the sense which the parties mutually understood it at the time it was made, with greater deference given to their clear intent rather than to any particular words which they may have used to express it. Stevens v. Fanning (supra) ; Keefer Coal Co. v. United Elec. Coal Cos., 291 Ill App 477, 485–486, 10 NE2d 210 (1937). In ascertaining the parties' intention, regard will be had to the practical construction the parties have given it. Weger v. Robinson Nash Motor Co., 340 Ill 81, 91, 172 NE 7 (1930) ;

347

M & J Diesel Locomotive Filter Corp. v. Nettleton, 56 Ill App2d 146, 151, 205 NE2d 659 (1965). No extrinsic aid to interpretation can be more valuable. Walters v. Walters, 409 Ill 298, 304, 99 NE2d 343 (1951).

In the instant case the trial court stated:

> The Court has a right to look into the intent of the parties. Certainly it was not the intent of the parties that he was to receive only $39.50 for his work.

It is also undisputed that in 1966 petitioner received $10,586.09 (one-third of $31,758.26 minus costs) as fees under the contract. We therefore conclude that the court properly found that the parties intended by their contract to provide compensation of one-third of the moneys recovered by Helen Murukas.

Throughout their briefs respondents refer to the trial as a summary proceeding. A petition was filed and both respondents filed answers. The case was called for trial. An examination of the report of proceedings shows that the trial judge gave defendants every opportunity to cross-examine the petitioner and to call Helen Murukas; extensive arguments were heard. We find that defendants had a full and fair trial.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.